J-S36004-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
MARDELL A. ABRAMS : No. 2099 EDA 2020

Appeal from the Order Entered October 23, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006844-2019

BEFORE: LAZARUS, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, J.: **FILED JANUARY 19, 2022**

The Commonwealth of Pennsylvania appeals from the order, entered in the Court of Common Pleas of Philadelphia County, granting the defense's motion to preclude the mention and introduction of a two-minute-forty-one-second cellular telephone video copying a portion of a convenience store's security video surveillance. After careful review, we reverse.

The Commonwealth charged Abrams with aggravated assault,[1] robbery, theft by unlawful taking,[2] simple assault,[3] and recklessly endangering another

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2702(a).

[2] *Id.* at § 3921(a).

[3] *Id.* at 2701(a).

person[4] (REAP) following an altercation between Abrams and the owner of a Sunoco A-Plus gas station/convenience store located at 5338 North 5th Street in Philadelphia. The owner testified at a preliminary hearing that, at approximately 10:15 PM on June 4, 2019, Abrams came into the convenience store after he was unsuccessful in pumping gas he had paid for.[5] Abrams walked inside to the cash register area of the store to complain to the owner. The owner testified that Abrams then tried to take a can of motor oil without paying for it. N.T. Preliminary Hearing, 9/24/19, at 8. The owner electronically locked the door to the store to prevent Abrams from leaving with the unpaid item. *Id.* Eventually, the owner opened the door to the store and retrieved the can of oil that Abrams had put down on the ground. *Id.* at 9.

At that moment, the owner testified that "[Abrams] came [back to the cash register area] and he grabbed me . . . [and] pushed me down on the floor and hit me several times in my head." *Id.* Specifically, the owner testified that Abrams hit him with a closed fist in the back of his head and on his neck. *Id.* at 9-10. The owner testified that Abrams then "took all of [his] belongings from [his] pockets . . . took [his] phone and [his] wallet and [his] set of keys and . . . ripped [his] pants all the way down and ran away." *Id.* at 10. Police quickly apprehended Abrams, who was still in possession of the

---

[4] *Id.* at 2705.

[5] The owner testified that a problem arose because Abrams initially told the owner the wrong pump number and, that subsequently, he "converted it to the right pump." N.T. Preliminary Hearing, 9/24/19, at 11.

owner's belongings. *Id.* at 10, 14. Following the preliminary hearing, the court entered a stay-away order preventing Abrams from "contacting or intimidating" the owner either "directly or indirectly" until the case is finally disposed of. *See* Order, 9/24/19; *see also* 18 Pa.C.S. § 4954 (protective orders).

During the altercation, the owner took a cell phone video of the surveillance footage from one of the store's cameras. According to the defense, the cell phone video, which lasts a total of 2 minutes and 41 seconds, captures only a portion of the time that Abrams is at the A-Plus station. In particular, the cell phone video captures the "moments when [] Abrams physically assaults [the owner]." Trial Court Opinion, 6/7/21, at 2.

On October 16, 2020, Abrams filed a motion to preclude the Commonwealth from admitting the cell phone video footage of the incident at trial, arguing that "the video in its current state would severely prejudice [him] as it only captures what could be qualified as criminal behavior . . . [and Abrams] is unable to properly admit the remainder of the video, which is exculpatory." Motion to Preclude, 10/16/20, at ¶ 11. In his motion, Abrams states that the Commonwealth only provided him with a portion of the cell phone video and did not produce it until October 7, 2020. Abrams cites Pa.R.Crim.P. 573 (mandatory disclosure), **Brady**[6] (pre-trial discovery), and

_____

[6] **Brady v. Maryland**, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence **favorable to an accused** upon request
*(Footnote Continued Next Page)*

Pennsylvania's discovery statute as the legal bases to justify exclusion of the evidence.

At the conclusion of the motion to preclude hearing, the trial judge stated her ruling as follows:

> I am going to grant the motion to preclude. I find that the video that does exist does not encompass the entire interaction that occurred between [Abrams] and the store[]keeper. The police had a duty to preserve the evidence that they did not meet. And the missing portion also could potentially have provided information for impeachment or otherwise assisted in the defense of []Abrams. Therefore, it is **Brady** material and I am precluding it[,] . . . precluding the video.

N.T. Motion *In Limine* Hearing, 10/23/20, at 42.[7]

_____

violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution") (emphasis added).

[7] In her oral ruling on the record at the conclusion of the October 23, 2020 motion to preclude hearing, the trial judge deemed the cell phone video inadmissible evidence based upon **Brady**. This was in error, where the cell phone video did not have "exculpatory value" and where any alleged exculpatory value with regard to missing footage is purely speculative. **See California v. Trombetta**, 467 U.S. 470, 489 (1986) (in order for evidence to be constitutionally material to require its preservation for disclosure, it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means"). However, in her Rule 1925(a) opinion, the trial judge states that she precluded the cell phone video based upon evidentiary and discovery principles—not based on **Brady**. Specifically, the trial court cites to Pa.R.E. 573(B)(1)(f) and Pa.R.Crim.P. 1001-1003 to support the decision to exclude the cell phone video. We do not find this discrepancy to be of any moment, since, as an appellate court, we may affirm a trial court's decision on any valid basis. **See Commonwealth v. Janda**, 14 A.3d 147, 161 n.8 (Pa. Super. 2011).

The Commonwealth filed a timely interlocutory appeal[8] and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The Commonwealth presents the following issue for our consideration: "Did the [trial] court err by precluding the use of a cell phone video showing [Abrams] assaulting and robbing the victim at [Abrams'] trial for the assault and robbery?" Commonwealth's Brief, at 3.[9]

The appellate standard of review for the admissibility of evidence is well-settled:

> An appellate court applies the following standard and scope of review when reviewing a challenge to a trial court's evidentiary rulings. When the appellate court reviews a trial court ruling on admission of evidence, it must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Talley*, 236 A.3d 42, 55 (Pa. Super. 2020).

---

[8] The Commonwealth has certified in its notice of appeal that the interlocutory order has the effect of terminating or substantially handicapping the prosecution. *See* Pa.R.A.P. 311(d) (Commonwealth may take appeal as of right from order that does not end entire case where Commonwealth certifies in notice of appeal that order will terminate or substantially handicap prosecution); *see also* 42 Pa.C.S. § 742 (Commonwealth may appeal pre-trial ruling on motion *in limine* which excludes Commonwealth evidence).

[9] Abrams has not filed an Appellee's brief in the instant matter.

The court granted the defense's motion, precluding admission of the alleged victim's cell phone video, and concluding that: the Commonwealth was unable to produce the original store security video; the cell phone video is not a "duplicate" as defined in the Rules of Evidence; and, using the cell phone video is not permissible where its use would be unfair to the defense under the circumstances. *See* Trial Court Opinion, 6/7/21, at 6, 9-10.

Pursuant to Rule 1002, known as the "best evidence rule" under common law, "[a]n original writing, recording, or **photograph**[10] is required in order **to prove its content** unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise." Pa.R.E. 1002 (emphasis added). Although the best evidence rule is traditionally applied only to writings, "[s]urveillance videotapes 'present the same type of circumstances which the best evidence rule was designed to guard against,' namely testimony about the content of a videotape when the original tape has not been produced or admitted." *Commonwealth v. Green*, 162 A.3d 509, 518 (Pa. Super. 2017), citing *Commonwealth v. Lewis*, 623 A.2d 355, 358 (Pa. Super. 1993) (first case to apply best evidence rule to videotape evidence).

While *testimony* to prove content is inadmissible if neither an original nor a duplicate is introduced, "[a] duplicate is admissible[,] to the same extent as the original[,] unless a genuine question is raised about the original's authenticity **or the circumstances make it unfair to admit the duplicate**."

---

[10] Under Pa.R.E. 1001, "[a] 'photograph' means a photographic image or its equivalent stored in any form." Pa.R.E. 1001**(c)**.

Pa.R.E. 1003 (emphasis added). Duplicates are defined as "cop[ies] produced by a mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces [an] original." Pa.R.E. 1001(e). "In those cases where the opposing party raises a genuine question as to the authenticity or fairness of using a duplicate, the trial court may require the production of the original under this rule." Pa.R.E. 1003, Comment. However, "[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if . . . **all the originals are lost or destroyed**, and **not by the proponent acting in bad faith**." Pa.R.E. 1004(a).

Here, the content of the cell phone video, i.e., Abrams' physically assaulting and robbing owner, is very much at issue in the instant case. *See Lewis*, *supra* (where defendant charged with retail theft of Walkmans® from Sears department store, contents of store's security videotape footage (i.e., defendant's alleged acts of retail theft) very much at issue in case). In addition, there is no question that the original surveillance footage from the convenience store has been destroyed through no fault of the Commonwealth, where there was no evidence or finding that the store's original video footage was destroyed due to the bad faith. Rather, the video was erased in accordance with the store's protocol. *Id.* at 1004(a). *Compare Green*, *supra* at 518 (upon satisfactory showing that proponent did not lose or destroy original, production of original excused and secondary evidence admissible) *with Lewis*, *supra* (where absence of security videotape was not

satisfactorily explained by security guard, judgment of sentence for retail theft reversed and case remanded for new trial; admitting officer's testimony regarding videotape's content was error under best evidence rule where Commonwealth might not have proven its case without such testimony). Moreover, no one has challenged the accuracy of the cell phone video's reproduction of the original store surveillance footage. Pa.R.E. 1001(e). Therefore, we conclude that the owner's cell phone video is a duplicate of the original.[11] Thus, the admissibility of the cell phone video as secondary evidence hinges on whether there is a genuine issue regarding the authenticity of the original or whether admitting the video—which admittedly is only a

---

[11] Although we classify the owner's cell phone video as a duplicate for purposes of our legal analysis, we note that the video could be considered a hybrid of sorts—i.e., a "duplicate original." **See Baum Estate**, 211 A.2d 521, 524 (Pa. 1965) (recognizing what is or is not "original" may vary according to situation). Here, the owner testified at the preliminary hearing that "everything happened in [his] video" and that the only time he ever saw the perpetrator's face, other than at the time he was being attacked, was from the cell phone video. N.T. Preliminary Hearing, 9/24/19, at 4, 6. Because there was nothing alleging that the owner's video was in any way a copy, but was the actual original video recorded from his cell phone, this is not a "duplicate" in the true sense of the term under the rules of evidence. **See Brenner v. Lesher**, 2 A.2d 731, 733 (Pa. 1938) (where duplicates of original written statement made by same mechanical operation, "the first impression and all others may be regarded as duplicate originals, and any one may be primary or preferred evidence of the writing when it is legally proven that its contents correctly represent the statement made or adopted by the one who is to be affected thereby"). In fact, Rule 1003, which explains the admissibility of "duplicates," acknowledges that since the best evidence rule was enacted, "[t]he extension [of admitting] all accurate copies seems justified in light of modern practice" where copies are "made by techniques that are more likely to produce accurate copies." **See** Pa.R.E. 1003, Comment.

*portion* of the video footage of the time that Abrams was at the A-Plus—would be unfair to Abrams. **See** Pa.R.E. 1003.

Our Court has held that the "mere possibility" that a recording "might have" depicted events differently does not establish "materiality" for purposes of a constitutional error. **Commonwealth v. Spotti**, 94 A.3d 367 (Pa. Super. 2014) (where trooper's onboard camera recording did not depict defendant's accident and was of poor quality, due to recording's low evidentiary value and existence of competent eyewitness testimony, trooper's failure to preserve footage did not amount to due process violation). Moreover, nowhere does Abrams explain what, if any, exculpatory evidence would have been captured on the video during the convenience store incident. At most, Abrams argues that the cell phone video footage "substantially prejudices [him] as [the video] only shows the alleged Defendant's actions and nothing that [preceded] it." Motion to Preclude, 10/16/20, at 8.

The Commonwealth claims it was unnecessary that the video capture the entire interaction between Abrams and the victim in order for the cell phone video to be admissible. The Commonwealth also asserts that the cell phone video "accurately depicted the entire encounter from the point where [Abrams] approached [the victim] in his store until he fled from the premises after beating and robbing him." Commonwealth's Brief, at 18. Finally, the Commonwealth asserts that the video's "missing pre[]lude" only depicts Abrams "attempt[ing] to pump gas and return[ing] to the store to complain"—

- 9 -

matters collateral to the issues at trial that would not provide any defense to the criminal charges. *Id.* at 18-19.

In **Commonwealth v. Williams**, 154 A.3d 336 (Pa. Super. 2017), the contents of a surveillance video were lost when a store owner tried to make a copy of the original. The Commonwealth attempted to admit testimony regarding the video's content. The trial court found that because the defendant had been permanently deprived of the opportunity to view the video, and where allowing testimony of the video's content would "result in a fundamentally unfair trial," the trial court suppressed any such testimony. On appeal, our Court concluded that because the video footage was only *potentially* useful for the defense, and because the trial court specifically found that the police did not act in bad faith in failing to preserve the original footage, the testimony regarding the video's content was admissible.

Like in **Williams**, we decline to find that any "potential" exculpatory evidence not captured on the owner's cell phone video (a total of 2 minutes and 41 seconds) warrants its preclusion. **Spotti**, **supra**. Here, the defense will have the opportunity to cross-examine the owner at trial with regard to the *entire* time that Abrams was on A-Plus property. Moreover, to exclude such relevant evidence would severely prejudice the Commonwealth whose case would be reduced to "a witness credibility case." Commonwealth's Brief, at 8.

Accordingly, we conclude that preclusion of the cell phone video was harmful to the Commonwealth. **Talley**, **supra**. In addition, **Brady** is not

applicable because the content of the video is not exculpatory, **see supra** at n.7; the Commonwealth did not act in bad faith with regard to the failure to have the original store surveillance video preserved or prevent its loss; suppression is not the proper remedy for late disclosure of the cell phone video;[12] and Abrams never challenged the authenticity of the original store surveillance footage.  Finally, even though the cell phone video may not have captured the entire account of Abrams at the A-Plus store/gas station on the day of the incident, the portion of the events that are depicted on the video is an accurate duplicate and any "missing" footage goes to the weight of the evidence as resolved by the factfinder.  **See Janda**, **supra** at 162 (defense's argument that police should have retained memory card, in order to determine whether card contained other photos with exculpatory evidence, does not implicate best evidence rule); **see also Commonwealth v. Bruce**, 916 A.2d 657, 661 (Pa. Super 2007) ("Any doubt raised as to the accused's guilt is to be resolved by the fact-finder."); **Commonwealth v. Hopkins**, 747 A.2d 910, 917 (Pa. Super. 2000) ("Resolving contradictory testimony and questions of credibility are matters for the [finder of fact].").

Order reversed.  Case remanded.  Jurisdiction relinquished.

---

[12] The Commonwealth indicated it did not object to the grant of a continuance for the defense in light of the late disclosure.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/19/2022